UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                          CASE NO.

       Plaintiff,

vs.

DSQUARED2, INC.,
A Foreign for Profit Corporation
D/B/A DSQUARED2

       Defendant.
_____/

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, DSQUARED2, INC., a foreign corporation d/b/a DSQUARED2 (hereinafter referred to as "DSQUARED2"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, DSQUARED2, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7) Defendant, DSQUARED2, is a company that sells men, women, and kids clothing, bags, shoes, accessories, sunglasses, hats, swimsuits, and underwear. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase earrings.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16) Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing their environment. As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but he needs the assistance of special software for visually impaired persons. The software that he uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates retail locations. The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to, among other things, view the products available at defendant's locations, purchase clothing, bags, shoes, accessories, sunglasses, hats, swimsuits, and underwear through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand.

20) Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing earrings through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to his home is important to him as an alternative when he is not able to visit the Defendant's stores.

23) The website also services Defendant's physical stores by providing information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to view the products available at defendant's locations, purchase clothing, bags, shoes, accessories, sunglasses, hats, swimsuits, and underwear, through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with

disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.dsquared2.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27)     Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28)     The opportunity to shop Defendant's merchandise from his home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29)     Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30)     During the months of June and July, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate himself as to the merchandise

and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31)  Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32)  Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33)  Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34)  A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing clothing, bags, shoes, accessories, sunglasses, hats, swimsuits, and underwear, through defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand.

35)  A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

System settings while doing the review:

Operating system: Windows 10

Browser: Google Chrome v. 104.0.5112.102

Screen Reader: NVDA v. 2022.2.2

List of violations encountered:

Violation: Functionality of the content is not operable through a keyboard interface. When the assistive technology (Keyboard Navigation and Blind Users) that provides screen reading of the site's content is turned on ([see video here](#)), navigating through the site using the keyboard is not fully functional. The buttons for selecting product size do not work. Making it impossible for the user to add the product to the cart and proceed to checkout.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/ncpncrwitbdp9z3/2022_09_09_065340_02.mp4?dl=0

Violation: Functionality of the content is not operable through a keyboard interface. When the assistive technology (Keyboard Navigation and Blind Users) that provides screen reading of the site's content is turned on ([see video here](#)), navigating through the

site using the keyboard is not fully functional. The buttons for selecting product size on this example do not work either. Making it impossible for the user to add the product to the cart and proceed to checkout.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/e9cde9622cdbkx3/2022_09_09_065340_03.mp4?dl=0

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who he can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://www.dsquared2.com/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

System settings while doing the review:

Operating system: Windows 10

Browser: Google Chrome v. 104.0.5112.102

Screen Reader: NVDA v. 2022.2.2

List of violations encountered:

Violation: Functionality of the content is not operable through a keyboard interface.

When the assistive technology (Keyboard Navigation and Blind Users) that provides

screen reading of the site's content is turned on (see video here), navigating through the site using the keyboard is not fully functional. The buttons for selecting product size do not work. Making it impossible for the user to add the product to the cart and proceed to checkout.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/ncpncrwitbdp9z3/2022_09_09_065340_02.mp4?dl=0

Violation: Functionality of the content is not operable through a keyboard interface. When the assistive technology (Keyboard Navigation and Blind Users) that provides screen reading of the site's content is turned on (see video here), navigating through the site using the keyboard is not fully functional. The buttons for selecting product size on this example do not work either. Making it impossible for the user to add the product to the cart and proceed to checkout.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/e9cde9622cdbkx3/2022_09_09_065340_03.mp4?dl=0

51)    Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since he has been denied full access to Defendant's website.

52)    As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

A.        A declaration that Defendant's website is in violation of the ADA;

B.        An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.        An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.        An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.        An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.        An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.       An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.       An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.       An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.       An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.       An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.


[1]

## COUNT II – TRESPASS

53)     Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

56)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

57)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

> COOKIE POLICY
>
> Pursuant to Article 13 of Regulation (EU) 2016/679 "General Data Protection Regulation" (hereinafter, the "GDPR") Dsquared2 S.p.A. with registered offices at Via Ceresio 9, 20154, Milan, Italy, privacy@dsquared2.com (hereinafter, "D2") and Digital

Boite s.r.l. with registered offices at Via Cusani 5, 20122, Milan,

Italy, privacy@digitalboite.com (hereinafter, "DB") jointly, the "Controllers", provide the following information about the cookies installed on the www.dsquared2.com website (hereinafter, the "website").

WHAT ARE COOKIES?

Cookies are small text files, normally consisting of letters and/or numbers, that are sent by the Website and stored on the browser that you use to access the internet from your device. The cookies are then sent back to the Website the next time you visit it. Cookies are used to save data about visits to the Website and are an extremely useful technology because they enable the Website to function more efficiently. Without cookies, the Website would have no way of "remembering" certain information, such as the contents of your shopping basket.

Cookies can be classified according to their:

duration: session cookies or persistent cookies;

origin: first-party cookies or third-party cookies;

purpose: strictly necessary cookies, performance analytics cookies and behavioural advertising cookies.

Cookies that expire at the end of a browser session (normally when the browser is closed or at the end of the session) are known as session cookies and are used for things such as keeping the browsing session active. Cookies that are stored for a longer period of time (from one session to another) are called persistent cookies and are used for things such as

saving your preferences and showing you targeted adverts. The terms first-party and third-party refer to the website or domain that installs the cookie. First-party cookies are installed directly by the Website, while third-party cookies are installed by another domain, for example, when the Website contains elements from other services, such as advertising platforms. It is worth noting that the purposes for which cookies are used can also be achieved through other similar technologies, including certain functions that are able to identify devices so that Website visits can be analyzed. This policy therefore applies to all technologies that store or access your device's data. Technologies such as HTML5 local storage, local shared objects (also known as flash cookies) and fingerprinting techniques fall within this category. Hereinafter, where the term cookies is used, it will be deemed to include these other similar technologies.

FOR WHAT PURPOSES ARE COOKIES USED ON THIS WEBSITE?

Strictly necessary cookies enable the Website to function correctly and allow you to easily use the Website's content and services. For example, the contents of your shopping basket can be saved while you continue to browse the Website, and your cookies preferences can be stored so that you need not click the cookie banner every time you visit the Website. Strictly necessary cookies cannot be disabled and you will not be asked for your consent before they are installed. These cookies are stored on your browser for the period necessary to enable the Website to function correctly. Performance analytics cookies are installed to measure certain actions that you take while browsing the Website. In particular, these cookies are used to statistically analyze Website hits or visits so that we can optimize the Website's structure, navigation design and content. These cookies are

not required in order for the Website to function, and you will therefore be asked for your consent before they are installed.

Targeting cookies are used to track how you browse the Website in order to analyze your behaviour for marketing purposes. The analysis is used to create a profile based on your tastes, habits and choices. This enables the Controllers to send you targeted advertising messages that relate to your interests and that match the preferences you have shown when browsing. These cookies are not required in order for the Website to function, and you will therefore be asked for your consent before they are installed.

A list containing full details of the cookies that are installed is provided in the "Cookie Settings", which can be found on the banner that appears the first time you visit any page on the Website. The list can also be found here:

HOW CAN YOU MANAGE YOUR COOKIE PREFERENCES?

When you first visit any page on the Website, you will be shown a banner containing a short notice and a link to visit the COOKIE SETTINGS CENTRE, where you can easily choose which cookies are installed. You can easily access the cookie settings centre at any time by clicking the link in the Website's footer.

In addition, you can change your cookie settings through your browser, with the option to delete all cookies or to stop certain websites from sending you cookies. Instructions for changing the cookie settings on the most common browsers can be found at the following

links:

[Google Chrome](#)

[Mozilla Firefox](#)

[Microsoft Edge](#)

[Safari](#)

Disabling or deleting cookies may stop certain parts of the Website from functioning correctly, may prevent you from using certain features, and may affect how well third-party services function.

TRANSFER AND DISCLOSURE OF DATA

The data collected via cookies may be processed by the employees and partners of the services responsible for pursuing the purposes indicated above. These parties are expressly authorized to process the data and have received adequate instructions on how to do so. The data may also be processed by trusted companies that perform technical and organizational tasks on behalf of D2 and DB. These companies act as data processors. In particular, the data may be processed by external parties operating as independent processors, such as government authorities and supervisory bodies.

YOUR RIGHTS

You can contact the Controllers by emailing [privacy@dsquared2.com](mailto:privacy@dsquared2.com) or [privacy@digitalboite.com](mailto:privacy@digitalboite.com) or by emailing the

17

address at the bottom of this paragraph in order to exercise your rights to access your data, have it erased, restrict its processing in the cases listed in Article 18 of the GDPR, and object to its processing in the event that it is being processed on the basis of the legitimate interests of both Controllers.

In the event that the processing is based on your consent or on the contract and that the data is processed automatically, you have the right to be sent your data in a structured, commonly used, machine-readable format and, where technically feasible, to have it transmitted to another controller without hindrance.

You also have the right to withdraw your consent to the use of non-essential cookies, without affecting the functioning and features of the Website. Lastly, you have the right to lodge a complaint with the supervisory authority.

D2 and DB have each appointed a Data Protection Officer (hereinafter, the "DPO"):

The DPO for D2 can be contacted by emailing dpo@dsquared2.com;

The DPO for DB can be contacted by emailing dpo@digitalboite.com

59) Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

**<u>Request for Jury Trial</u>**

61)     Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434